**Emily Rena-Dozier, OSB #134674**
emily.rena-dozier@lasoregon.org
**Courtney Crowe, OSB #063056**
courtney.crowe@lasoregon.org
Legal Aid Services of Oregon
520 SW 6th Ave., Suite 700
Portland, OR 97204
(503) 471-1162

**Edward Johnson, OSB #965737**
ejohnson@oregonlawcenter.org
Oregon Law Center
522 SW Fifth Ave., Suite 812
Portland, OR 97204
(503) 473-8310

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BLANCA BOTELLO, | Case No. 3:19-cv-00582 |
| Plaintiff, | SECOND AMENDED COMPLAINT<br>42 U.S.C. § 1983 |
| v. | DEMAND FOR JURY TRIAL |
| CITY OF GRESHAM, a municipal corporation; CLIFFORD HOECKER, in his official and individual capacities; | |
| Defendants. | |

Plaintiff brings this complaint against the City of Gresham and its Police Department, and against Clifford Hoecker, an officer employed by the Gresham Police Department, alleging as follows:

## INTRODUCTION

This is a case about a police officer who, while on duty and in uniform, entered the home of a domestic violence survivor against her will and without a court order or warrant in order to assist the survivor's abusive husband in removing marital property. The case is further exacerbated by the fact that the officer in question is also the survivor's landlord.

Plaintiff and her husband, Miguel Botello, rented a house from Officer Hoecker and his wife. In November of 2018, Mr. Botello was arrested for assaulting plaintiff. After plaintiff obtained a restraining order against Mr. Botello, he removed himself from the lease. On or about December 22, 2018, Officer Hoecker arrived at plaintiff's home, in uniform, accompanied by Mr. Botello and several of Mr. Botello's family members. Without a warrant or any form of court order, and over plaintiff's protests, Officer Hoecker forced his way into plaintiff's home and allowed Mr. Botello and Mr. Botello's family members to remove multiple items, including the home's electronic security system. Plaintiff and her children, already traumatized by the previous incident of domestic violence, were terrified by the police-assisted invasion of their home. They continue to feel unsafe in their home and in the presence of law enforcement officers.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against the City of Gresham and Officers Hoecker for violating her Fourth and Fourteenth Amendment rights by entering her home under color of law without consent, a warrant, or a court order, and seizing her property without notice, a hearing, or any other form of legal process.

### I. JURISDICTION AND VENUE

1.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because plaintiff's claims arise under federal law.

2. Venue is proper under 28 U.S.C. § 1391(b) in that the claims alleged herein arose in this district.

## II. PARTIES

3. Plaintiff Blanca Botello is a resident of Oregon and has, at all relevant times, rented a home in Gresham from Officer Hoecker and his wife (not a party to this action).

4. Defendant City of Gresham is a municipal corporation created and authorized under the laws of the State of Oregon. It maintains a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

5. Defendant Clifford Hoecker is an employee of the City of Gresham and an officer of the Gresham Police Department.

## III. FACTUAL ALLEGATIONS

6. Officer Clifford Hoecker is a sworn officer of the Gresham Police Department ("GPD"), and, for all times relevant to this action, plaintiff's landlord.

7. Officer Hoecker and his wife own a home in Gresham Oregon located at 1845 SE Hale Drive ("Hale Drive Residence"). Beginning in June of 2016, Officer Hoecker and Ms. Hoecker rented the Hale Drive Residence to plaintiff and her husband, Miguel Botello.

8. Officer Hoecker has at various times employed Mr. Botello to do electrical work at Officer Hoecker's rental property.

9. Mr. Botello owns registered firearms, including a handgun and an AR-15 semi-automatic rifle, which he kept in a gun safe at the Hale Drive Residence.

10. Plaintiff has two children, one with Mr. Botello and one from a prior relationship.

11. In November of 2018, Mr. Botello assaulted plaintiff in their home, in the presence of the children. He was arrested by members of the GPD and was subsequently

prosecuted for harassment constituting domestic violence. A criminal no contact order was entered by the court.

12. The day after Mr. Botello's arrest for domestic violence, a GPD officer accompanied Mr. Botello into the Hale Drive Residence so that he could gather his essential personal items. Plaintiff consented to the entry.

13. Plaintiff filed for a civil restraining order against Mr. Botello, which the court granted on November 5, 2018. The order was upheld after a contested hearing on December 3, 2018, in which the court found that Mr. Botello represented a credible threat to the physical safety of plaintiff. Under the terms of the restraining order, Mr. Botello was prohibited from coming within 150 feet of plaintiff or the Hale Drive Residence. The court also ordered Mr. Botello to surrender his firearms.

14. The court did not order that Mr. Botello be accompanied by police officers to retrieve any essential personal items from the Hale Drive Residence (a process known as a "civil standby").

15. On or about November 16, 2018, at plaintiff's request, GPD officers removed the gun safe containing Mr. Botello's firearms and stored the firearms at the GPD premises. A report was filed by the officers who retrieved the firearms.

16. After plaintiff's restraining order was issued, Mr. Botello contacted Officer Hoecker, informed him about the restraining order, and asked that his name be removed from the rental agreement for the Hale Drive Residence. Officer Hoecker did so.

17. Plaintiff also informed Officer Hoecker and Ms. Hoecker about Mr. Botello's arrest and the restraining order.

18. After removing Mr. Botello from the rental agreement, Officer Hoecker and Ms. Hoecker sent plaintiff a notice terminating her rental agreement effective February of 2019.

19. Plaintiff filed for a divorce from Mr. Botello on December 3, 2018. As a result of that filing, a statutory order was placed in effect restraining either party from transferring or disposing of any marital property.

20. On or about December 22, 2018, Mr. Botello contacted the GPD and requested that police perform a civil standby at the Hale Drive Residence to allow Mr. Botello to remove items of property in addition to the essential personal items he had removed with police assistance in November.

21. Officer Hoecker, who was on duty at the time, responded to the call a few minutes later and agreed to accompany Mr. Botello to the Hale Drive Residence for a civil standby.

22. Officer John Heer, another GPD officer, also responded to Mr. Botello's call for assistance and asked to take the call. Officer Hoecker informed the Officer Heer that Officer Hoecker knew the parties involved, and stated that he would take the call. Officer Heer stated that he would act as a cover officer.

23. At all relevant times, GPD policy required that any time a GPD officer is placed in circumstances that would require the officer to take enforcement action or provide official information or services to any individual with whom the officer has a business relationship, the officer must promptly notify their immediate supervisor. If no supervisor is available, the officer must request that another uninvolved officer relieve the officer who has a business relationship with the individual.

24. Officer Hoecker did not contact his immediate supervisor before assisting Mr. Botello with the civil standby at the Hale Drive Residence.

5 – SECOND AMENDED COMPLAINT

25. Officer Hoecker was aware that GPD policy regarding civil standbys does not require that a court have ordered the standby before an officer will assist with the requested standby. He was also aware that GPD policy does not limit the number of civil standbys that officers will assist with.

26. Mr. Botello was accompanied by several of his family members, including his mother, his brother, and his daughter.

27. Officer Hoecker did not communicate to Mr. Botello that there was any limitation on the number of individuals who he would assist to enter plaintiff's home.

28. As both a residential landlord and an officer of the law, Officer Hoecker knew or should have known that Oregon law requires that a landlord provide at least 24 hours' advance notice to a tenant before entering the rental property.

29. Officer Hoecker did not contact plaintiff to notify her of the standby or to schedule a time for the standby.

30. At all relevant times, GPD policy required that all civil standbys be coded as a two-officer response call.

31. Officer Hoecker arrived at the Hale Drive Residence before Officer Heer. Officer Hoecker did not wait for Officer Heer to arrive before approaching plaintiff's home.

32. When Officer Hoecker approached plaintiff's home, he was in uniform, and was accompanied by Mr. Botello and Mr. Botello's family members. When plaintiff answered the door, Officer Hoecker informed her that he was assisting Mr. Botello in retrieving personal property and demanded that plaintiff allow Officer Hoecker, Mr. Botello, and his family members into plaintiff's home.

33. Plaintiff was surprised and alarmed to see her landlord at the door, in uniform, accompanied by her estranged husband and his family. Officer Hoecker explained that Mr. Botello would be allowed to enter plaintiff's home for a civil standby to recover Mr. Botello's belongings, and that Mr. Botello's family members would be allowed in to help Mr. Botello carry items and load them into a truck.

34. Plaintiff objected to Officer Hoecker entering her home or allowing Mr. Botello and his family into her home. She informed Officer Hoecker that there was a restraining order in place, that Mr. Botello had already picked up his personal property with GPD assistance in November, and that there was a pending divorce that prevented any distribution of the marital property. She also stated that she did not want Officer Hoecker to assist with the standby because he was her landlord.

35. Plaintiff explicitly denied Officer Hoecker permission to enter.

36. Officer Hoecker was aware that GPD policy regarding civil standby states that "If the petitioner is uncooperative, the respondent will be instructed to seek private legal advice and obtain a court order to obtain the desired personal effects, and the respondent will be asked to leave the scene."

37. Despite having no warrant, court order, or other authority, and despite GPD policy to the contrary, Officer Hoecker told plaintiff that she could not prevent him from entering her home.

38. Officer Hoecker then entered plaintiff's home and allowed Mr. Botello to accompany him.

39. At no time did plaintiff consent to Officer Hoecker's entry into her home.

40. Officer Hoecker was aware that no emergency or other exigent circumstances existed at the time that he entered plaintiff's home.

41. Plaintiff then further objected to Mr. Botello's family members being allowed into the home. Officer Hoecker sent Mr. Botello's family members to wait outside the property while Mr. Botello began gathering multiple items of the Botellos' marital property.

42. Officer Hoecker observed Mr. Botello remove items from plaintiff's home, including electronic equipment and the security system for the home.

43. Officer Hoecker at no time provided plaintiff with a receipt or other form of accounting for the property that Mr. Botello removed from plaintiff's home.

44. Plaintiff called the GPD to request assistance. Dispatch informed plaintiff that additional officers were on their way.

45. Several minutes after Officer Hoecker and Mr. Botello entered plaintiff's home, Officer Heer arrived at the Hale Drive Residence, accompanied by a trainee officer. Officer Heer and his trainee entered without knocking or requesting permission from plaintiff to enter.

46. At no time did Officer Hoecker inform Officer Heer that plaintiff had denied permission for Officer Hoecker, Mr. Botello, and Mr. Botello's family to enter plaintiff's home.

47. Mr. Botello, while observed and accompanied by Officer Heer, entered plaintiff's bedroom. Mr. Botello then indicated to Officer Hoecker that the gun safe was missing. Officer Hoecker demanded that plaintiff tell him where the gun safe was. Plaintiff informed Officer Hoecker that the guns had already been confiscated by the GPD, and that Mr. Botello was prohibited from having access to firearms under the terms of the restraining order.

48. Officer Hoecker demanded that plaintiff produce a receipt from the GPD to explain the whereabouts of the firearms.

49. Plaintiff was frightened by Officer Hoecker's conduct, particularly because it appeared to her that he was assisting Mr. Botello in locating firearms that Mr. Botello was prohibited from accessing by the terms of the restraining order.

50. Officer Hoecker told plaintiff to calm down and informed her that she was "fucking impossible," or words to that effect. He then laughed at plaintiff.

51. Plaintiff's children were present throughout the time that Officer Hoecker was accompanying Mr. Botello through the home, including while Officer Hoecker cursed and laughed at plaintiff.

52. Officer Heer and his trainee then accompanied Mr. Botello into the garage of the Hale Drive Residence while plaintiff and Officer Hoecker remained in the living room. Officer Hoecker did not inform Officer Heer that plaintiff had refused to allow Mr. Botello's family members onto the premises. Officer Hoecker also did not inform Officer Heer that Officer Hoecker had ordered Mr. Botello's family members to wait outside the premises.

53. Mr. Botello requested permission from Officer Heer for Mr. Botello's family members to enter the garage and assist Mr. Botello in removing additional items of marital property. Officer Heer gave permission for Mr. Botello's family members to enter. At no time did Officer Heer request or obtain permission from plaintiff for the additional individuals to enter the garage.

54. At least one of Mr. Botello's family members then entered the garage and assisted Mr. Botello in loading items of property onto Mr. Botello's truck.

55. Eventually, Mr. Botello and his family left with multiple items of marital property, all of which were subject to the statutory restraining order issued in the Botellos' divorce proceedings.

56.     GPD Sergeant Tom Walker, Officer Hoecker's supervisor, then arrived at the scene and informed plaintiff that Officer Hoecker was "a fine officer."

57.     Plaintiff filed a complaint with the GPD against Officer Hoecker.

58.     The GPD conducted an investigation of Officer Hoecker and concluded that his permitting Mr. Botello and his family to enter plaintiff's home and seize property without a warrant or court order did not violate department policy. The GPD investigation stated that there was no GPD policy limiting the number of civil standbys that GPD officers would assist with.

59.     The investigation did conclude that Officer Hoecker had violated GPD policy regarding conflicts of interest based on his ownership of plaintiff's home. The investigation also determined that Officer Hoecker was unprofessional when he cursed and laughed at plaintiff, yet stated that "the swearing and chuckling were minor, as Officer Hoecker only said one curse word and chuckled only one time."

60.     The police-assisted invasion of plaintiff's home, accompanied by her abuser and his family, was devastating for plaintiff and her children. As a survivor of domestic violence, plaintiff relied on the police to protect her from further abuse by enforcing the terms of her restraining order. Instead, a police officer forcibly entered her home without her consent, attempted to assist her abuser in accessing firearms, allowed her abuser to remove the home security system, and cursed and mocked her in front of her children. This same officer was plaintiff's landlord, who at the time of his unlawful entry was attempting to terminate plaintiff's tenancy and force her and her children out of their home.

61.     Adding further insult to injury, Officer Hoecker's supervisor dismissed plaintiff's concerns and praised Officer Hoecker's conduct. The GPD's investigation into the incident resulted in a finding that Officer Hoecker had not violated any GPD policy by entering plaintiff's

home, over her objections, to enforce a civil standby that was not ordered by any court, and to assist Mr. Botello in removing items to which he had no legal entitlement.

62. As a result of the actions of Officer Hoecker and the GPD, plaintiff experiences ongoing, daily fear that the GPD will not respond to enforce her restraining order if Mr. Botello violates it.

63. Plaintiff experiences daily intrusive thoughts and anxiety that Officer Hoecker will once again arrive at her home unannounced and force her to allow her abuser to ransack her belongings.

64. Plaintiff experiences daily concern for the safety and emotional security of her children, who now express fear and anxiety whenever they see a uniformed police officer.

65. Plaintiff made reasonable efforts to resolve this matter prior to initiating litigation, by contacting defendants on February 15, 2019 and April 12, 2019 to notify them of impending litigation.

66. Despite plaintiff's efforts, the parties have not been able to resolve their dispute.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM:
### Fourth Amendment to the U.S. Constitution and 42 U.S.C. § 1983
### (Defendant Hoecker in his Personal and Official Capacity)

67. Plaintiff incorporates by reference the above allegations as if fully set forth herein.

68. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

69. Officer Hoecker violated plaintiff's right to be secure in her person, house, papers and effects against unreasonable searches and seizures when, under color of law, he entered her home over her protests and without a warrant, court order, or probable cause.

70. Officer Hoecker knew or should have known that his actions in entering plaintiff's home over her objections violated both the United States Constitution and GPD's official policy.

71. Officer Hoecker did not wait until Officer Heer had arrived at the Hale Drive Residence before approaching or entering plaintiff's home. As a reasonably foreseeable consequence of Officer Hoecker's failure to await Officer Heer, Officer Heer was unaware that plaintiff had refused permission for the officers to enter her home. Officer Hoecker's actions resulted in Officer Heer and his trainee entering plaintiff's home against her will, in violation of the Fourth Amendment.

72. As a result of Officer Hoecker's unlawful actions, plaintiff suffered harm, including fear, humiliation, and emotional distress.

73. Plaintiff is entitled to her reasonable attorney fees on this claim pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM:
**Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 – Due Process**
**(Defendant Hoecker in his Personal and Official Capacity)**

74. Plaintiff incorporates by reference the above allegations as if fully set forth herein.

75. The Due Process Clause of the Fourteenth Amendment provides that no state "shall any state deprive any person of life, liberty, or property, without due process of law [.]"

76. Officer Hoecker deprived plaintiff of her property without notice, a hearing, or any other form of process when, under color of law, he assisted Mr. Botello and his family in removing multiple items of valuable property from Ms. Botello's home, including the home security system.

77. Officer Hoecker did not wait until Officer Heer had arrived at the Hale Drive Residence before approaching or entering plaintiff's home. Upon Officer Heer's arrival, Officer Hoecker did not inform Officer Heer that plaintiff had refused permission to Mr. Botello's family members to enter the property. Officer Hoecker also failed to inform Officer Heer that Office Hoecker had ordered Mr. Botello's family members to wait outside the property. As a reasonably foreseeable consequence of Officer Hoecker's failure to await Officer Heer, to inform Officer Heer of plaintiff's refusal of entry, or to inform Officer Heer of Officer Hoecker's orders, Officer Heer allowed Mr. Botello's family members to enter plaintiff's home and remove multiple items of property against plaintiff's will and in violation of her rights under the Due Process Clause of the Fourteenth Amendment.

78. As a result of Officer Hoecker's unlawful actions, plaintiff suffered harm, including monetary loss, fear, humiliation, and emotional distress.

79. Plaintiff is entitled to her reasonable attorney fees on this claim pursuant to 42 U.S.C. § 1988.

## V. PRAYER FOR RELIEF

WHEREFORE, plaintiff now requests the following relief:

A. A declaration that Officer Hoecker's and Officer Heer's actions in entering plaintiff's home and allowing third parties to enter plaintiff's home over her objections and without a court order violated the Fourth Amendment to the U.S. Constitution;

B. A declaration that Officer Hoecker's and Officer Heer's actions in allowing third parties to remove property from plaintiff's home without notice or an opportunity to be heard violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

C. An order and judgment enjoining the City of Gresham to immediately amend its policies and practices regarding the conduct of civil standbys to conform with the Court's declaration and to appropriately train its officers in keeping with such amended policies and practices;

D. An award of compensatory damages against all defendants in an amount to be determined at trial, plus interest from the date of judgment;

E. An award of punitive damages against Officer Hoecker in his individual capacity, plus interest from the date of judgment;

F. An award of reasonable attorney fees pursuant to 42 U.S.C. § 1988, and costs and disbursements incurred herein;

G. Such other and further legal and equitable relief as this Court deems just and proper.

DATED: December 16, 2019

Respectfully submitted,

s/ Emily Rena-Dozier
Emily Rena-Dozier, OSB #134674
Legal Aid Services of Oregon

Of Attorneys for Plaintiffs